UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRAVELERS INDEMNITY
COMPANY OF AMERICA,

        Plaintiff,

-against-

ACCREDITED SURETY &
CASUALTY COMPANY, INC.

        Defendant.

**MEMORANDUM AND ORDER**

Case No. 21-CV-7189 (FB) (JRC)

*Appearances*:
*For the Plaintiff*:
LISA SZCZEPANSKI
Attorneys for Travelers Indemnity
Company of America
485 Lexington Ave., 6th Fl.
New York, NY 10017

*For the Defendant*:
EDWARD S. BENSON
Nicoletti Spinner Ryan Gulino Pinter LLP
555 Fifth Avenue, 8th Fl.
New York, NY 10017

**BLOCK, Senior District Judge:**

    In this diversity jurisdiction action pertaining to an insurance coverage dispute, Plaintiff Travelers Indemnity Company of America ("Travelers") and Defendant Accredited Surety & Casualty Company, Inc. ("ASCC") both move for summary judgment.  For the foregoing reasons, Travelers' motion is granted, and ASCC's motion is denied.

1

## I. BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. A moving party is entitled to summary judgment when it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When both parties move for summary judgment, the Court examines each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).

This case springs from an underlying New York state court personal injury case, *Gerard Quinn v. The City of New York, et al* ("Underlying Action"), in which claimant Gerald Quinn ("Quinn") brought claims for negligence and violations of the New York Labor Law against Topline Drywall, Inc. ("Topline"), New York City Housing Authority ("NYCHA"), and LIC 73 Owner, LLC ("LIC 73") for injuries Quinn suffered from falling from a ladder at a NYCHA Project (the "Project") in Long Island City in August 2019.

Travelers, the insurer for contractor Archstone Builders, LLC ("Archstone"), seeks an Order declaring that: (a) the insurer for subcontractor Topline, ASCC, owes a duty to defend NYCHA and LIC 73 in connection with the Underlying

Action; (b) ASCC's coverage obligations to NYCHA and LIC 73 in connection with the Underlying Action are primary; and (c) Travelers' coverage obligations are excess to those of ASCC with respect to the Underlying Action; and granting an award in Travelers' favor against ASCC for all sums Travelers has paid in defending NYCHA and LIC 73 in the Underlying Action.

### A. The Purchase Order

According to Travelers, on June 13, 2018, Archstone entered a Purchase Order (the "Purchase Order") with Topline, wherein Topline agreed to provide work for rough carpentry and drywall work for Archstone at the Project site. The Purchase Order states:

> Subcontractor will submit project specific insurance documents . . . specifically naming ASB, Owner, their officers, directors, agents and employees, Building Owner, Landlord, Managing Agent, Lender and all applicable additional indemnitees . . . as an additional insured afforded on a primary and non-contributory basis[.]

ASCC disputes whether there is an admissible, signed version of the Purchase Order.

### B. The Insurance Policies

ASCC issued a commercial general liability policy to Topline (the "ASCC Policy") for the policy period of December 14, 2018, to December 14, 2019, that includes a duty to defend the insured against any suit seeking bodily injury damages. The Policy also contains endorsements that provide coverage for

3

additional insureds with respect to, in relevant part, liability for bodily injury "caused, in whole or in part, by" Topline's "acts or omissions . . . in the performance of [its] ongoing operations for the additional insured(s)."

Travelers issued a commercial general liability policy (the "Travelers Policy") to Archstone for the policy period of December 31, 2018, to December 31, 2019. The Travelers Policy provides that coverage under the policy is excess over any other coverage available where a party is added as an additional insured.

### C. The Underlying Action and This Action

After Quinn, an employee of Archstone, fell from a ladder owned by Topline, he commenced the Underlying Action against Topline, NYCHA, and LIC 73. Travelers tendered and retendered the defense and indemnification of all applicable indemnitees to ASCC, but ASCC denied the tender and retender. In the Underlying Action, Travelers has tolled more than $55,000 in costs as of September 2023.

### II.   DISCUSSION

The duty to defend insureds is "derived from the allegations of the complaint and the terms of the policy." *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 74 N.Y.2d 66, 73 (1989). To determine whether ASCC has a duty to defend the additional insureds of LIC 73 and NYCHA, the Court begins by "compar[ing] the allegations of the complaint with the operative insurance policy." *Int'l Bus.*

*Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004). Because an insurer's duty to defend is "exceedingly broad" — broader than the duty to indemnity — the duty is "invoked whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94–95 (2d Cir. 2018) (cleaned up).[1] A duty to defend thus exists unless "it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer will be obligated to indemnify the insured." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003) (quoting *Frontier Ins. Co. v. State*, 87 N.Y.2d 864, 867 (1995)). This standard "applies equally to additional insureds and named insureds." *Worth Const. Co. v. Admiral Ins. Co.*, 10 N.Y.3d 411, 415 (2008) (cleaned up).

### A. Existence of Valid Purchase Order

Before turning to the complaint in the Underlying Action and the ASCC Policy, the Court must first resolve whether a valid Purchase Order exists establishing LIC 73 and NYCHA as additional insureds. ASCC contends that there is no admissible written contract because Travelers has only produced

---

[1] While unnecessary to do here, even if the complaint's explicit language does not trigger the duty, the Court must also look "beyond the four corners of the complaint to determine whether there is any potentially covered occurrence." *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 506 (S.D.N.Y. 2010) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65–66 (1991)).

unsigned and partially signed versions of the Purchase Order. This argument is without merit.

Travelers has produced a version of the Purchase Order on Archstone letterhead, dated as of June 13, 2018, and signed by Niall McDonagh on behalf of Topline. An offer made by Archstone and accepted by Topline via signature establishes mutual assent by the parties to be bound by the Purchase Agreement. *See Gonzalez v. Gotham Org. Inc.*, No. 16-CV-607 (FB) (ST), 2023 WL 6214544, at *7 (E.D.N.Y. Sept. 25, 2023) ("[T]he suggestion that the rental agreement would not be enforceable because it was unsigned by TJM – the party seeking to enforce the agreement – is without legal merit."); *see also In re Portjeff Dev. Corp.*, 128 B.R. 38, 44 (Bankr. E.D.N.Y. 1991) (the offer became binding on both parties when party received the offer and signed, executed, and returned the agreement) (citing *Camrex Contractors v. Reliance Marine Applicators*, 579 F. Supp. 1420 (E.D.N.Y. 1984)). Accordingly, LIC 73 and NYCHA qualify as additional insureds under the Purchase Agreement.

ASCC next quibbles that the Purchase Order has not been properly authenticated, thereby making it "unknown" whether Archstone and Topline entered into the agreement. The Court is thoroughly unconvinced by this argument. As an initial matter, if ASCC has any reason to believe that the Purchase Order proffered by Travelers is fraudulent, it would be better for ASCC

6

to say so rather than proceeding behind evidentiary niceties. Nonetheless, turning to the heart of the matter, the Court is satisfied as to the Purchase Order's authenticity. Under Federal Rule of Evidence 901(a), parties must provide "evidence sufficient to support a finding that the matter in question is what its proponent claims," a bar that the Second Circuit has described as "not particularly high." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). This standard is satisfied "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification" and can be proved circumstantially or directly. *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991). Here, there is sufficient evidence as to the document's authenticity. Todd Anderson of Travelers attests to having received the Purchase Order from Archstone, both Archstone and Topline clearly performed as if there were a valid contract, and ASCC does not offer any evidence to the contrary. Accordingly, the Court finds that the Purchase Order is valid and binding.

### B. The Duty to Defend

The Court turns next to the Underlying Action's complaint. Quinn alleged, inter alia, that the defendants, including Topline, were negligent in "permitting a ladder that Plaintiff was on to exist and remain in a broken, bent, defective, loose, dangerous, improperly secured and/or unsecured, improperly fastened and/or unfastened, improperly positioned and aligned condition," "operating, cleaning,

7

controlling, regulating, supervising, inspecting, repairing, managing, erecting, constructing, designing, maintaining and overseeing said premises and more particularly the aforesaid ladder;" and "failing to foresee the existence of a hazard from the condition of said ladder[.]"

Quinn's allegations are sufficient to trigger ASCC's duty to defend. "[A] liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Int'l Bus. Machines Corp*, 303 F.3d at 427 (quoting *Fitzpatrick*, 78 N.Y.2d at 63). Because "the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *High Point Design, LLC*, 911 F.3d at 95 (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002)). Here, because Quinn clearly alleges negligence by Topline, his complaint induces ASCC's duty to defend.

ASCC argues that Topline cannot be held liable under Quinn's complaint, citing several cases in its reply brief that purportedly establish that Topline was not negligent. But as this Court explained recently, the merits of Quinn's complaint — i.e., whether Topline is ultimately held liable for negligence — are "irrelevant; if the allegations suggest coverage, 'the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.'" *Certain*

8

*Underwriters at Lloyd's, London v. Travelers Cas. Ins. Co. of Am.*, 664 F. Supp. 3d 288, 293 (E.D.N.Y. 2023) (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444 (2002)).  In fact, "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course."  *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006).  In this case, a "complaint subject to defeat because of debatable theories must nevertheless be defended by the insured."  *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326 (1974).

ASCC urges the Court to consider extrinsic evidence to vitiate its duty to defend.  While the "precise delineations of the use of extrinsic evidence to permit an insurer to disclaim its duty to defend are 'unclear' under New York law," ASCC is correct that courts in the Second Circuit will sometimes consider undisputed evidence of facts to conclusively establish that the insurer faces no possible liability.  *Philadelphia Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 186 (S.D.N.Y. 2020) (quoting *Int'l Bus. Machines Corp.*, 363 F.3d at 148 n.4).  However, the Court cannot conclude, based on the facts presented, that there is "no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision."  *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002) (quoting *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991)).  Rather, based on Quinn's allegations, it is

9

reasonably possible that Topline was negligent in the performance of its operations. To the extent there is any ambiguity, the Court must "liberally construe" the allegations and resolve any doubt as to whether the allegations state a claim within the coverage of the ASCC policy "in favor of the insured and against the carrier," *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323-24 (S.D.N.Y. 2020).

    The cases ASCC cites to avoid its duty are to no avail. In *Worth*, the New York Court of Appeals granted the defendant summary judgment because the plaintiff/general contractor conceded that the negligence claim against the subcontractor in the underlying action lacked factual merit and should be dismissed. *See Worth*, 10 N.Y.3d at 414-15. Here, by contrast, the "complaint alleges a clear connection between the claimant's injury and the risk for which the additional insured endorsements in the policy were intended." *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44, 51 (S.D.N.Y. 2015) (cleaned up).

    ASCC raises much ado about the causation standard. The ASCC Policy limits coverage for liability for bodily injury "caused, in whole or in part" by Topline's acts or omissions in the performance of its ongoing operations, language that the New York Court of Appeals has read to limit coverage to injuries *proximately* caused by Topline. *See Burlington Ins. Co. v. NYC Transit Auth.*, 29

N.Y.3d 313, 321 (2017) (the phrase "caused, in whole or in part" requires proximate causation). Thus, the ASCC Policy requires ASCC to defend Topline's additional insureds if the complaint in the Underlying Action suggests a reasonable possibility that Topline proximately caused Quinn's injuries. Quinn's complaint does so, by alleging that Topline was negligent. *See id.* at 323 (negligence suffices to establish liability under the "caused, in whole or in part, by" language). Accordingly, ASCC has a duty to defend the additional insureds.

Finally, the Court finds that ASCC's coverage obligations to NYCHA and LIC 73 in connection with the Underlying Action are primary and Travelers' coverage obligations are excess to those of ASCC with respect to the Underlying Action, which ASCC apparently does not dispute. The Court determines the priority or allocation of coverage by comparing the respective policies' "other insurance" clauses. *See Emp'rs Ins. Co. of Wausau v. Harleysville Preferred Ins. Co.*, 726 F. App'x 56, 64 (2d Cir. 2018). Here, the ASCC Policy provides that its coverage is primary absent inapplicable exceptions, while the Travelers Policy provides that its coverage is excess of any other insurance available to the additional insured. Travelers is thus entitled to recoup the defense costs it has incurred in the Underlying Action. *See Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 615 (S.D.N.Y. 2017).

11

## CONCLUSION

For the foregoing reasons, Travelers' motion for summary judgment is GRANTED, and ASCC's motion is DENIED. Within ten days, Travelers shall submit an appropriate declaratory judgment for this Court's signature.

**SO ORDERED.**

                                                     /S/ Frederic Block\
                                                     FREDERIC BLOCK\
                                                     Senior United States District Judge

Brooklyn, New York\
March 13, 2024